# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JEFFREY KOESTER,**
    **Plaintiff,**

    v.                                    **Case No. 04-C-0790**

**MICHAEL J. ASTRUE,**
**Commissioner of the Social Security Administration,**
    **Defendant.**

## DECISION AND ORDER

Two years ago, I reversed the Social Security Commissioner's decision denying plaintiff Jeffrey Koester's application for disability benefits and remanded the case for further proceedings. I then awarded plaintiff's counsel fees in the amount of $5350 under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Following further administrative proceedings, the Commissioner recently awarded plaintiff and his family benefits, including $110,160 in past-due benefits. Plaintiff's lawyer now seeks approval pursuant to 42 U.S.C. § 406(b) of fees in the amount of $16,890 under his contingency fee agreement with plaintiff. The Commissioner does not oppose an award but contends that the amount sought is unreasonable.

**I.**

An attorney who succeeds in obtaining benefits for a social security claimant may recover fees pursuant to 42 U.S.C. § 406. Section 406(a) governs fees for representation in administrative proceedings before the Social Security Administration ("SSA"); § 406(b) controls fees for representation in federal court. Kopulos v. Barnhart, 318 F. Supp. 2d 657, 660 (N.D.

Ill. 2004) (citing Gisbrecht v. Barnhart, 535 U.S. 789, 794 (2002)). The statute provides for a "reasonable fee" not to exceed 25% of the past-due benefits awarded to the claimant. Id. at 661. Such fees are deducted from the claimant's retroactive benefits; they do not constitute an award against the government. Id.

If the attorney previously obtained fees from the government under the EAJA for work performed in court,[1] such award offsets the allowable fee under § 406(b). Id. at 664; see also Hanrahan v. Shalala, 831 F. Supp. 1440, 1452 (E.D. Wis. 1993) (stating that "when attorney's fees are awarded under both the SSA and the EAJA for the same services, an attorney is entitled to keep the larger fee but must return the smaller fee to the claimant").

> Thus, if a claimant is entitled to past-due benefits in the amount of $10,000, the attorney under the SSA would be entitled to [up to] 25% of that amount, or $2,500, and the claimant would receive $7,500 in net benefits. However, if the attorney had secured an EAJA award of $1,000 "for the same work," the claimant would receive the benefit of that award in the form of a credit, which would be paid by the Government, against the $2,500 owed to the attorney. Therefore, the attorney would net $2,500 and the claimant would net $8,500 (as opposed to $7,500). Similarly, if the EAJA award had been $3,000, the attorney would net the entire $3,000 and the claimant would net the entire $10,000.

Kopulos, 318 F. Supp. 2d at 664.

The court must approve any fee under § 406(b). Congress intended such review not to override the claimant and counsel's fee arrangement but rather to act as an "independent

---

[1] EAJA fees are awarded to a "prevailing party" in a civil action against the United States where the government's position was not "substantially justified," no "special circumstances" make an award unjust, and the fee application is submitted to the court within 30 days of final judgment. 28 U.S.C. § 2412(d)(1); United States v. Hallmark Const. Co., 200 F.3d 1076, 1078-79 (7th Cir. 2000). Such an award, unlike one made under § 406(b), is paid by the government and is not deducted from a claimant's benefits. In most successful actions for judicial review of social security decisions, including this one, the court remands the matter to the SSA for further proceedings rather than finding the claimant entitled to benefits. If on remand the SSA awards benefits, requests for attorney's fees are considered under § 406.

check" to ensure that the arrangement yielded a reasonable result in the particular case. Mitchell v. Barnhart, 376 F. Supp. 2d 916, 919 (S.D. Iowa 2005).

**II.**

In the present case, plaintiff entered into a 25% contingency fee agreement with counsel. (Pl.'s Br. Supp. Mot. for Att'y's Fees Ex. 1 [R. 26-2].) The amount of the past-due benefits is $110,160, 25% of which is $27,540.[2] Counsel was awarded $5300 under § 406(a) at the agency level and, as noted above, previously received $5350 under the EAJA. Counsel therefore seeks an award of $16,890, consistent with his 25% contingency fee agreement, following offsets for amounts previously paid under § 406(a) and § 2412. Counsel states that plaintiff wishes to settle his accounts with counsel and pay the remaining amount due under their contract. Counsel contends that given the intent of the parties, the risk he assumed in accepting the case, and the efforts expended and results achieved the requested fee is a reasonable one.

The Commissioner contends that the requested fee is not reasonable.[3] He notes that

---

[2]The past-due amount in this case reflects benefits due plaintiff and his dependents. Counsel may under § 406(b) receive fees based on the accrued amount due all family members. Hopkins v. Cohen, 390 U.S. 530, 534-35 (1968).

[3]It may seem strange that the Commissioner has standing to challenge a claimant's desire to pay a lawful fee to his own lawyer out of his own back benefits. See Wells v. Sullivan, 907 F.2d 367, 372 (2d Cir. 1990) (noting "the anomalous role of the Social Security Administration in first denying benefits to a claimant, and then after losing the case, posing as a protector of the plaintiff, but spending more time and money in order to reduce the fees to be paid to the claimant's attorney"). However, courts have held that the Commissioner may weigh in on the issue, see Lewis v. Secretary of Health & Human Services, 707 F.2d 246, 248 (6th Cir. 1983) ("In view of the humanitarian policy of the Social Security program to benefit the disabled, we agree that the Secretary retains an interest in the fair distribution of monies withheld for attorney's fees.") (internal citation and quote marks omitted), and plaintiff does not suggest otherwise.

3

counsel spent 38.30 hours representing plaintiff in district court. Thus, he argues that counsel is requesting a fee award based on an hourly rate of $580.67 per hour ($22,240 [$16,890+$5350] / 38.30), which, in his view, constitutes a windfall to counsel.

In Gisbrecht, the Court held that § 406(b) was intended to control, not displace contingent fee agreements. 535 U.S. at 793. Thus, the district court should not in reviewing a request under § 406(b) rely primarily on the "lodestar" (i.e., hourly rate) method commonly used under fee shifting statutes. Id. at 806. Rather, the court should review the amount set by the agreement – so long as it stays within the 25% boundary set by Congress – for reasonableness. Id. at 807. In conducting this review, the court may consider the character of the representation and the results obtained, reducing an award if the attorney is responsible for delay in the proceeding that had the effect of inflating the past-due benefits, or if the fee is so large in comparison to the amount of time counsel spent on the case such that the fee would constitute a windfall to the attorney. Id. at 808.

Under this standard, I find that the requested fee is reasonable. First, the representation provided by counsel in this case was of high quality. Counsel did not initially represent plaintiff at the agency level and therefore had to fashion arguments for reversal based on an unfamiliar record he had no role in creating. Counsel timely filed two detailed, well-written briefs, and I accepted most of the assignments of error urged therein.[4] This was not an instance in which

---

[4]Counsel requested no extensions of the briefing schedule in this case. (The Commissioner asked for one such extension.) Therefore, there can be no argument that dilatory tactics artificially inflated the past-due amount. See Gisbrecht, 535 U.S. at 808. Further, I reversed the Commissioner's decision on the merits, finding that the Administrative Law Judge erred in evaluating plaintiff's mental impairment and residual functional capacity, the credibility of plaintiff's wife's statements, the report of plaintiff's treating physician, and in questioning the vocational expert. (R. 16 at 13-24.)

4

counsel simply filed boilerplate pleadings then demanded a full 25% fee. See McGuire v. Sullivan, 873 F.2d 974, 981 (7th Cir. 1989) (stating that a deduction would be proper in such circumstances). Further, counsel is a highly experienced and effective advocate in these matters, see, e.g., Harris v. Barnhart, 259 F. Supp. 2d 775, 783 (E.D. Wis. 2003), and he submits evidence demonstrating that he has litigated 174 such cases in this district alone. (Pl.'s Reply Br. [R. 28] at 5.) Second, the results obtained were fully favorable. Both plaintiff and several of his family members were awarded benefits, generating a $110,160 past-due amount. In addition, plaintiff and his family will be entitled to future monthly benefits and to Medicare. Third, the amount sought by counsel under § 406(b), reduced by the previous EAJA award, is significantly less than the 25% permitted by law and provided for in the fee agreement.

The Commissioner's focus on a projected hourly rate is misplaced. McGuire, 873 F.2d at 979 (stating that "where a contingency contract exists, the court should not place primary emphasis on the hourly rate"). Instead, in reviewing a request under § 406(b), the court begins with the contingent fee contract. Gisbrecht, 535 U.S. at 793 (rejecting the lodestar method in favor of "the primacy of lawful attorney-client fee agreements"). Sound policy reasons support this approach.

First, in reviewing a fee under a contingency agreement, the court must be cognizant of the fact that even the most effective lawyer will not win all of his cases. Thus, any determination of the reasonableness of fees in those cases in which the lawyer does prevail must take account of the lawyer's risk of receiving nothing for his services. McGuire, 873 F.2d at 980. As Justice Brennan explained in Hensley v. Eckerhart, 461 U.S. 424, 448-48 (1983) (Brennan, J., concurring in part and dissenting in part):

5

> Most attorneys paid an hourly rate expect to be paid promptly and without regard to success or failure. Customary rates reflect those expectations. Attorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate. The difference, however, reflects the time-value of money and the risk of nonrecovery usually borne by clients in cases where lawyers are paid an hourly rate.

Second, given the nature of the market, failure to award fees pursuant to contingency fee agreements could impede the ability of social security claimants to find counsel. As the McGuire court put it:

> If courts regularly invalidated reasonable contingency agreements in favor of a lodestar fee, then attorneys would no longer enter into such agreements. Without the greater incentive for attorneys to take these cases stemming from the potential for an enhanced fee payment, claimants who have difficult cases and who cannot afford to guarantee payment might not be able to secure representation.

873 F.2d at 980.

Finally, fees under § 406(b), unlike under fee shifting statutes, are taken out of the claimant's award rather than the defendant's pocket, so there is no danger of unduly burdening the defendant with a large award. Thus, the court should have more latitude in finding reasonable a fee agreement negotiated privately between the attorney and the claimant, who has an incentive at the time he seeks representation to find the best value in attorney services. Id. at 979.

Therefore, I reject the Commissioner's attempt to characterize the instant request as unreasonable based solely on the projected hourly rate. Of course, the court is under no obligation to approve a contingent fee arrangement and may reduce an award that constitutes a windfall to counsel. However, there is no windfall in the present case. Counsel spent a significant amount of time litigating the case, making detailed, case-specific arguments for

6

reversal on the merits of the Commissioner's decision. This was not a case in which plaintiff's victory came about with little or no effort by counsel, see Mitchell, 376 F. Supp. 2d at 921 (citing as an example of a windfall a situation in which, shortly after the contingency-fee agreement was signed, the plaintiff received benefits, without any effort expended by the attorney), or where the Commissioner's decision was reversed on a technicality, see Thomas v. Barnhart, 412 F. Supp. 2d 1240, 1244 (M.D. Ala. 2005) (citing as an example of a windfall a case in which "an incomplete administrative record, as opposed to an examination of the merits of the case, required reversal and remand for a new hearing that ended with a finding of disability"). In sum, counsel will not in this case receive an inordinately large benefit based on minimal effort expended. See McGuire, 893 F.2d at 981.

Finally, even if I were to engage in an analysis of the hourly rate based on the contingency fee amount, I would approve the request.

> [N]umerous courts have approved awards representing similar or even higher rates. For example, in McGuire, the court upheld an award of $15,533.12 for 42.74 hours of legal service before the court which amounted to somewhat less than twenty-five percent of past-due benefits. The award in McGuire represented over $316 per hour over 12 years ago. See also Martin v. Barnhart, 225 F. Supp.2d 704, 2002 WL 31259914 (W.D. Va. Oct. 9, 2002) (awarding $10,189.50 for 16.82 hours of court-related work which represented over $ 605 per hour); Mayfield v. Sullivan, 1992 U.S. Dist. LEXIS 2545, 1992 WL 51666 (N.D. Ill. March 6, 1992) (awarding $4,275.00 in attorney's fees for 11.25 hours of court-related work which represented $380 per hour in 1992); Short v. Sullivan, 1992 U.S. Dist. LEXIS 2087, 1992 WL 38404 (N.D. Ill. Feb. 25, 1992) (awarding $3,000 in attorney's fees for 7.75 hours of work which amounted to an hourly fee of over $387 per hour in 1992).

Hussar-Nelson v. Barnhart, No. 99 C 0987, 2002 U.S. Dist. LEXIS 22832, at *9 (N.D. Ill. Nov. 19, 2002); see also Thomas, 412 F. Supp. 2d at 1244 (citing cases approving contingent fees that translated to hourly rates of $636, $1500, $446 and $625); Hearn v. Barnhart, 262 F. Supp. 2d 1033, 1037 (N.D. Cal. 2003) (noting that since Gisbrecht was decided, district courts

have generally accepted that under § 406(b) de facto hourly rates will exceed those for non-contingency fee arrangements, and citing cases involving fees equating to $ 694.44 per hour, $393 per hour, $605 per hour, $187.55 per hour, $206.02 per hour, and $350.49 per hour). Therefore, even if I were to give weight to the Commissioner's projected hourly rate, I would find the instant request reasonable.[5]

**III.**

**THEREFORE, IT IS ORDERED** that plaintiff's motion for an award of attorney's fees pursuant to 42 U.S.C. § 406(b) is **GRANTED**, and Attorney David Traver is awarded fees in the amount of $16,890.

Dated at Milwaukee, Wisconsin, this 13th day of April, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[5]Courts have differed on how much weight, if any, the projected hourly rate should be given in the reasonableness analysis under § 406(b). See Ellick v. Barnhart, 445 F. Supp. 2d 1166, 1169-71 (C.D. Cal. 2006) (collecting cases). Under the logic of Gisbrecht and McGuire, it seems to me that a projected hourly rate should carry little weight. As discussed above, given the nature of contingent fee work, many entirely reasonable awards will translate into exaggerated hourly rates. Instead, the court should evaluate the amount of work counsel performed, not to compute an hourly rate but to ensure that counsel did enough to earn a "full" fee; the quality of counsel's work, including the nature and specificity of the issues raised, and the timeliness of counsel's submissions; the results obtained, including the degree of success and the bases for reversal or remand; and the amount requested, i.e. the percentage of the claimant's back benefits counsel requests in fees. In any event, the fee requested in the present case is reasonable even if the Commissioner's projected hourly rate is given weight.

8